704 So.2d 657 (1997)
SHARPER IMAGE CORPORATION, Appellant,
v.
DEPARTMENT OF REVENUE OF the STATE OF FLORIDA, Appellee.
No. 96-3734.
District Court of Appeal of Florida, First District.
December 8, 1997.
Rehearing Denied February 20, 1998.
*658 Thomas J. Jones and Susan L. Turner of Holland & Knight, Tallahassee, and Martin I. Eisenstein of Brann & Isaacson, Lewiston, ME, for Appellant.
Eric J. Taylor and Jarrell L. Murchison of the Office of the Attorney General, Tallahassee, for Appellee.
Cass D. Vickers, H. Michael Madsen and Robert S. Goldman of Vickers, Madsen & Goldman, Tallahassee, for Amicus Curiae Service Merchandise.
KAHN, Judge.
This case involves a tax assessment against appellant, Sharper Image Corporation (Sharper Image), by the Department of Revenue (Department). In 1994, Sharper Image filed suit in circuit court, challenging the Department's assessment of use tax on catalogs published by Sharper Image outside of Florida and sent by Sharper Image's printer directly to Florida residents during the audit period of April 1, 1987, through March 31, 1990. Sharper Image and the Department filed cross-motions for summary judgment. The circuit court granted the Department's motion and denied Sharper Image's motion, entering final summary judgment in the Department's favor. Sharper Image has appealed and raises essentially two points: (1) Sharper Image exercised no taxable privilege with respect to the catalogs in Florida as required by the Florida statute, and (2) the assessment of use taxes on Sharper Image catalogs violates the First Amendment and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution because the newspaper exemption of section 212.08(7)(w), as applied by the Department, violates the First Amendment, and the religious publication exemption of section 212.06(9) violates the First Amendment.[1] Sharper Image seeks abatement of use taxes assessed against it. We hold that the Department properly assessed a use tax, and that, irrespective of the illegality of the exemptions, Sharper Image is not entitled to the remedy it seeks.
*659 In this case, no dispute exists regarding the facts. Sharper Image is a Delaware corporation headquartered in San Francisco. The company makes retail sales of merchandise through both mail and telephone order, and in store sales. During the audit period, Sharper Image maintained seven retail stores in Florida. It collected and remitted to the Department all Florida sales and use taxes due on sales at the Florida stores and on mail order sales to Florida residents.
The challenged use taxes were assessed on Sharper Image's monthly catalog. The catalog was printed and mailed from Nebraska by a contractor selected by Sharper Image. The catalogs were delivered by the United States Postal Service to residents of Florida and other states. Sharper Image stipulated that it intentionally, purposefully, and with the object to increase sales in Florida, distributed or caused to be distributed, the catalogs.

I. Exercise of a Taxable Privilege
First, appellant asserts that Sharper Image exercised no taxable privilege in Florida with respect to the catalogs. According to appellant, the circuit court ignored the requirement under Florida law that a use or distribution of tangible personal property must occur "in this state" to properly trigger the use tax. Further, in arguing that no taxable event has occurred in this case, amicus Service Merchandise asserts that language in section 212.06(1)(a)[2] and section 212.06(6)[3] "make[s] plain the Legislature's design only to tax transactions or activities which occur after the arrival of the property in Florida and its repose here as part of the mass of property." Neither contention will withstand scrutiny.
Section 212.05(1)(b), Florida Statutes (1987), provides: [A] tax is levied on each taxable transaction or incident, which tax is due and payable as follows: ...
(b) At the rate of 5 percent of the cost price of each item or article of tangible personal property when the same is not sold but used, consumed, distributed, or stored for use or consumption in this state.

(emphasis added).[4] Further, section 212.06(1)(a), Florida Statutes (1987), provides:
The aforesaid tax at the rate of 5 percent of the retail sales price as of the moment of sale, 5 percent of the cost price as of the moment of purchase, or 5 percent of the cost price as of the moment of commingling with the general mass of property in this state, as the case may be, shall be collectible from all dealers as herein defined on the sale at retail, the use, the consumption, the distribution, and the storage for use or consumption in this state of tangible personal property or services taxable under this part....
(emphasis added).[5] In our view, the collective import of these statutes is that if tangible personal property is distributed in Florida, it is subject to a use tax. Because Sharper Image distributed tangible personal property, i.e., its catalogs, in Florida, it exercised a taxable privilege in this state and must pay a use tax. The "mass of property" and "moment of commingling" language in sections 212.06(1)(a) and 212.06(6) refers only to valuation of property taxed under the statute and does not impose an additional prerequisite to taxation itself.
Sharper Image also asserts that "for the mailing of promotional materials from outside Florida directly to Florida residents to be a taxable event, a company must engage in activities regarding the production, printing, or mailing of the promotional materials in Florida "and "[t]hat simply did not *660 occur here." The Connecticut Supreme Court has recently rejected a similar argument made by Sharper Image in contesting a use tax assessment on the distribution of its catalogs in that state: "Although Sharper Image neither stored, accepted or consumed the catalogs in this state, it did cause them to be distributed in Connecticut, which satisfies the broad taxable event of `other use'...." Sharper Image, Corp. v. Miller, 240 Conn. 531, 692 A.2d 774, 779 (1997). The Connecticut use tax statute, unlike the Florida statute, does not include the word "distribution." Nevertheless, the Connecticut Supreme Court determined that distribution fell within the plain language of "other use," a term included in the statute. See also Service Merchandise Co. v. Arizona Dep't of Rev., 188 Ariz. 414, 937 P.2d 336 (App.1996) (upholding use tax assessment because distribution of catalogs and fliers in Arizona was use incidental to ownership even though "distribution" not specifically included in statute); cf. Sharper Image Corp. v. Department of Treasury, 216 Mich.App. 698, 550 N.W.2d 596 (1996) (finding no use tax due where use tax statute did not specifically provide for taxation of distributions), appeal denied, 560 N.W.2d 636 (Mich.1997).
In this case, not only does the Florida use tax statute specifically refer to distribution, but it also contains a definition of "use tax": "The term `use tax' referred to in this chapter includes the use, the consumption, the distribution, and the storage as herein defined." § 212.02(28), Fla. Stat. (1987). Further, the Florida statute defines "use":
"Use" means and includes the exercise of any right or power over tangible personal property incident to the ownership thereof, or interest therein, except that it does not include the sale at retail of that property in the regular course of business. "Use" also means the consumption or enjoyment of the benefit of services.
§ 212.02(27), Fla. Stat. (1987). In addition, the definition section of the statute contains the following provision:
The terms "retail sales," "sales at retail," "use,""storage," and "consumption" include the sale, use, storage, or consumption of all tangible advertising materials imported or caused to be imported into this state. Tangible advertising material includes displays, display containers, brochures, catalogs, price lists, point-of-sale advertising, and technical manuals or any tangible personal property which does not accompany the product to the ultimate consumer.
§ 212.02(19)(b), Fla. Stat. (1987) (emphasis added). These statutes defining "use tax" and "use," particularly section 212.02(19)(b), evidence the Legislature's intent to tax the distribution of catalogs in Florida, the activity at issue here.
Although Sharper Image made all of the arrangements concerning the mailing of the catalogs from its California headquarters, Sharper Image nevertheless supplied the addresses for the catalogs and directed that those catalogs be placed in the United States mail. See Sharper Image Corp. v. Miller, 42 Conn.App. 310, 678 A.2d 977, 980 (1996) ("The plaintiff's control was the direction; relinquishing the right to withdraw or redirect does not for purposes of `ownership' relinquish control.... By directing the shipping of the catalogs, Sharper Image retained ownership, even though it relinquished physical possession to the postal service."), aff'd, 240 Conn. 531, 692 A.2d 774 (1997); Talbots, Inc. v. Schwartzberg, 928 P.2d 822 (Colo.App.1996) (holding that distribution of catalogs to city addresses constituted use within city subject to taxation under municipal code provision). Sharper Image thus caused its catalogs to be distributed in Florida. Indeed, in the Connecticut case, Sharper Image may have conceded that its actions regarding the catalogs constituted "distribution" in that state. See Miller, 692 A.2d at 778 ("The crux of Sharper Image's argument is that, under the circumstances of this case, the distribution of its catalogs in Connecticut did not meet the definition of `use'...." (emphasis added)); Miller, 678 A.2d at 980 ("Sharper Image also argues that this statutory definition of `use' cannot be judicially extended to include `distribution.'"). Accordingly, in this case, the circuit court properly upheld the use tax assessment against Sharper Image because it distributed its catalogs in this state.

*661 II. Constitutional Challenges to Exemptions

In the second point on appeal, appellant asserts that the assessment of use taxes on Sharper Image catalogs violates the First Amendment and the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution because the newspaper exemption of section 212.08(7)(w)[6] violates the First Amendment, and the religious publication exemption of section 212.06(9)[7] violates the First Amendment. Specifically, appellant argues that because the newspaper exemption and the religious publication exemption are unconstitutional, the use tax assessed against Sharper Image cannot be upheld. In response, appellee asserts that Sharper Image does not have standing to raise such an argument. To the point, appellee contends that Sharper Image is not in competition with newspapers or religious publications and, therefore, Sharper Image has not suffered any injury by having assessed against it a use tax on the distribution of its catalogs even though newspapers and religious publications are exempt from such tax.
In support of its contention that Sharper Image lacks standing, appellee relies on Eastern Air Lines, Inc. v. Department of Revenue, 455 So.2d 311 (Fla.1984). In Eastern Air Lines, an airline that had been assessed a sales tax on aviation jet fuel attempted to challenge, as unconstitutional under the Commerce Clause, provisions granting fuel tax refunds to farmers and commercial fishermen. 455 So.2d at 316. The Department asserted that the airline did not have standing to challenge these provisions because the airline was not in the fishing or farming business and the airline had not argued that farmers and/or fisherman are in direct or indirect competition with fishing or agriculture. Id. at 317. The Florida Supreme Court agreed that the airline did not have standing to raise the unconstitutionality of the refund provisions. Id.; see State ex rel. Clarkson v. Philips, 70 Fla. 340, 70 So. 367, 369 (1915) ("One cannot raise an objection to the constitutionality of a part of a statute, unless his rights are in some way injuriously affected thereby, or unless the unconstitutional feature renders the entire act void or renders the portion complained of inoperative.... The constitutionality of a provision of a statute cannot be tested by a party whose rights or duties are not affected by it, unless the provision is of such a nature that it renders invalid a provision of the statute that does affect the party's rights or duties."). The court explained that, even if it eliminated the refund provisions, the airline's rights would not be affected:
We believe that the legislature's intent could still be accomplished if the full refund provisions relating to local commercial fishing and agriculture were to be eliminated and the remainder of the statute left intact. Therefore, we cannot say that these provisions, were we to declare them unconstitutional, are of such a nature that they would render invalid the portion of the statute that does affect Eastern's rights. Eastern has no standing to raise this issue.
Eastern Air Lines, 455 So.2d at 317. Similarly, in this case, even assuming the exemptions cited by appellant are unconstitutional, this does not render invalid the portion of the statute affecting Sharper Image.
As appellant argues, however, "[t]he demarcation between the favored and non-favored classifications of taxpayers in Eastern, i.e., between agricultural and fishing interests on the one hand, and airlines on the other, was not itself an unconstitutional distinction," whereas in this case the line separating taxable and nontaxable publications *662 has been drawn based on unconstitutional criteria, i.e., the contents of those publications. Because appellant's constitutional claim thus involves a content-based approach to taxation of publications, it does appear, contrary to appellee's assertion, that appellant has standing. See Arkansas Writers' Project, Inc. v. Ragland, 481 U.S. 221, 227, 107 S.Ct. 1722, 1726-27, 95 L.Ed.2d 209 (1987) (holding that publisher of general interest magazine had standing to challenge constitutionality of sales tax scheme, which exempted sales of newspapers and religious journals, even though it did not publish such newspapers or religious journals). See also Texas Monthly, Inc. v. Bullock, 489 U.S. 1, 7-8, 109 S.Ct. 890, 895-96, 103 L.Ed.2d 1 (1989) (finding that publisher of nonreligious periodical had standing to challenge sales tax exemption provided by Texas statute for religious periodicals even if state law remedy for unconstitutional exemption would be to eliminate exemption rather than extend it to nonreligious periodicals); Department of Rev. v. Magazine Publishers of Am., Inc., 604 So.2d 459, 462-63 (Fla.1992) (Finding the imposition of a tax on the sales of magazines while exempting the sales of newspapers constituted an invalid tax scheme under First Amendment, the court explained that "the content of a publication is a key factor in determining whether the publication is subject to taxation" and the state had failed to show a compelling justification for the content-based taxation of publications.).
Regarding the merits of the second point on appeal, appellant argues that McKesson Corp. v. Division of Alcoholic Beverages & Tobacco, 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), and Department of Revenue v. Kuhnlein, 646 So.2d 717 (Fla.1994), require the abatement of the use taxes assessed against Sharper Image because, under the Due Process Clause, the state must provide "meaningful backward-looking relief" when a taxing scheme is invalidated as discriminatory. Sharper Image correctly informs us that the Florida Supreme Court has declared the newspaper exemption in section 212.08(7)(w), Florida Statutes (Supp.1988), unconstitutional. See Department of Revenue v. Magazine Publishers of Am., Inc., 604 So.2d 459 (Fla.1992). In addition, in Texas Monthly, Inc. v. Bullock, the United States Supreme Court held that a sales tax exemption for religious publications violated the First Amendment as made applicable to the states by the Fourteenth Amendment. 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989). The dissenting justices noted that, with the majority's decision, "the Court topples an exemption for religious publications of a sort that expressly appears in the laws of at least 15 of the 45 States that have sales and use taxes," including Florida. Id. at 30-31 n. 2, 109 S.Ct. at 907-08 n. 2. Nevertheless, Florida's exemption for religious publications has not yet specifically been declared unconstitutional and, given that the Florida Supreme Court has already found the newspaper exemption unconstitutional, we do not find it necessary to engage in further analysis on this record regarding the possible unconstitutionality of the religious publication exemption. Indeed, Sharper Image does not suggest that its requested remedy would take a different form depending on which exemption is involved.

III. Remedy

A. Predeprivation Procedure
In McKesson, the United States Supreme Court explained that "[i]f a State places a taxpayer under duress promptly to pay a tax when due and relegates him to a postpayment refund action in which he can challenge the tax's legality, the Due Process Clause of the Fourteenth Amendment obligates the State to provide meaningful backward-looking relief to rectify any unconstitutional deprivation." 496 U.S. at 31, 110 S.Ct. at 2247 (footnote omitted; emphasis added). Nevertheless, in a footnote, the Court indicated that a predeprivation hearing would also satisfy due process concerns:
We have long held that, when a tax is paid in order to avoid financial sanctions or a seizure of real or personal property, the tax is paid under "duress" in the sense that the State has not provided a fair and meaningful predeprivation procedure. In contrast, if a State chooses not to secure payments under duress and instead offers a meaningful opportunity for taxpayers to withhold contested tax assessments and to *663 challenge their validity in a predeprivation hearing, payments tendered may be deemed "voluntary." The availability of a predeprivation hearing constitutes a procedural safeguard against unlawful deprivations sufficient by itself to satisfy the Due Process Clause, and taxpayers cannot complain if they fail to avail themselves of this procedure.
Id. at 39 n. 21, 110 S.Ct. at 2251 n. 21 (citations omitted; emphasis added).
This court recently determined that the procedure, pursuant to section 72.011, whereby a taxpayer can contest a tax without penalty, by filing suit and paying the amount of the contested tax into the court registry, constituted a meaningful predeprivation remedy, consistent with due process, and made it unnecessary to provide meaningful backward-looking relief. Newsweek, Inc. v. Department of Rev., 689 So.2d 361 (Fla. 1st DCA 1997). In Newsweek, the taxpayer, relying on McKesson, sought a refund of taxes paid on the retail sale of magazines during the period, prior to the decision in Magazine Publishers, when newspapers were exempt. The court found McKesson inapplicable:
[T]he coercive penalties which deprived the taxpayers in McKesson of any effective predeprivation remedy are not factors in this case. The taxpayers in McKesson were subject to onerous penalties if they did not pay the disputed tax before seeking a refund in a proceeding contesting the constitutionality of the tax. They had no predeprivation remedy because section 72.011 was not available to contest the liquor taxes at issue in that case; for that reason, McKesson is inapplicable.
Newsweek, 689 So.2d at 364.
In this case, Sharper Image has availed itself of the predeprivation procedure under section 72.011. Therefore, the due process concerns in McKesson, which formed the basis of the Supreme Court's "meaningful backward-looking remedy" decree, are not present here. Indeed, appellant has cited us no cases suggesting that a McKesson-type remedy is available in circumstances such as this, where an adequate predeprivation procedure is available. Sharper Image essentially argues that an adequate predeprivation remedy must always be tantamount to a meaningful backward-looking remedy. These cannot be the same, however, because otherwise the McKesson decision would not have discussed the availability of adequate predeprivation procedures.

B. State Law Treatment of Unconstitutional Exemption
Federal constitutional requirements notwithstanding, the general rule for remedying an unconstitutional exemption looks to state law. See Texas Monthly, 489 U.S. at 8, 109 S.Ct. at 896 ("It is not for us to decide whether the correct response as a matter of state law to a finding that a state tax exemption is unconstitutional is to eliminate the exemption, to curtail it, to broaden it, or to invalidate the tax altogether."); see also American Trucking Ass'ns v. Smith, 496 U.S. 167, 176, 110 S.Ct. 2323, 2329-30, 110 L.Ed.2d 148 (1990) ("When we have held state taxes unconstitutional in the past it has been our practice to abstain from deciding the remedial effects of such a holding. While the relief provided by the State must be in accord with federal constitutional requirements, we have entrusted state courts with the initial duty of determining appropriate relief." (citation to McKesson omitted)). The Florida tax statutes specifically indicate that even when an exemption is declared unconstitutional, such declaration shall not affect the taxes imposed:
(2) It is hereby declared to be the specific legislative intent to tax each and every ... use ... set forth in this chapter ... [and] should any exemption or attempted exemption from the tax ... be invalid, ineffective, inapplicable, unconstitutional, or void for any reason, such declaration shall not affect the tax or taxes imposed herein, but such ... use ... exempted or attempted to be exempted from the tax ... shall be subject to the tax ... to the same extent as if such exemption or attempted exemption had never been included herein.
(3) It is further declared to be the specific legislative intent to exempt from the tax... only such ... uses ... to the extent that such exemptions are in accordance *664 with the provisions of the constitutions of the state and of the United States.
§ 212.21, Fla. Stat. In Magazine Publishers, after finding the newspaper exemption unconstitutional, the Florida Supreme Court turned to Florida law to determine the proper remedy and focused on section 212.21. 604 So.2d at 463-64. According to the Florida Supreme Court, the statute "makes it clear that as between the imposition of the tax or the granting of an exemption, the tax shall prevail." Magazine Publishers, 604 So.2d at 463; see also Thayer v. South Carolina Tax Comm'n, 307 S.C. 6, 413 S.E.2d 810, 815 (1992) (holding that although exemption from use tax granted to religious publications violated First Amendment, exemption was severable from statute and thus taxpayer was still responsible for use tax on real estate advertising publication). Similarly, in this case, Florida law determines the proper remedy for the "unconstitutional taxing scheme" challenged by appellant, and that law indicates that the unconstitutional exemption, or exemptions, should be eliminated, not the assessed tax.

C. Dissimilarity to Refund Cases
We further find that Sharper Image's analogy to the taxation schemes in McKesson and Kuhnlein is imperfect. In Kuhnlein, the supreme court found the Florida impact fee imposed on vehicles brought to this state after purchase elsewhere facially unconstitutional. 646 So.2d at 725. For such a violation the "only clear and certain remedy is a full refund to all who have paid this illegal tax." Id. at 726. In this case, however, appellant challenges the exemptions, and not the tax itself. Nothing in Kuhnlein mandates a full refund remedy for a taxpayer such as Sharper Image.
The taxpayer in McKesson had to pay a tax on alcoholic beverages that, by virtue of favored treatment of certain Florida products, offended the Commerce Clause. This conclusion derives from the Florida Supreme Court's treatment of McKesson's claim:
"[T]he tax scheme at issue places a clear discriminatory burden on interstate commerce...." Division of Alcoholic Beverages & Tobacco v. McKesson Corp., 524 So.2d 1000, 1005 (Fla.1988). McKesson found itself at a competitive disadvantage, because "[i]t [was] undisputed that manufacturers and distributors of beverages which qualify for preferential treatment under this scheme are in direct competition with manufacturers and distributors of alcoholic beverages which do not." Id. at 1008. Such an observation simply cannot be made about the circumstances of Sharper Image versus the sellers of newspapers or religious publications. Although Sharper Image must pay the use tax, it can show no such disadvantage. Nothing in the record before us leads us to indulge a presumption that newspapers and religious publications have gained a competitive advantage over Sharper Image's catalog by virtue of the challenged exemptions.

IV. Conclusion
We hold that Sharper Image is subject to the use tax assessment because it distributed catalogs in this state. A McKesson remedy is out of place here because Sharper Image had an adequate predeprivation procedure in section 72.011, which it has pursued, and the tax involved in this case is a legal tax that did not competitively disadvantage the taxpayer. Though Sharper Image has standing to challenge the "taxing scheme" as unconstitutional, it is not entitled to the relief it seeks.[8]
AFFIRMED.
ERVIN and BENTON, JJ., concur.
NOTES
[1] The parties filed a stipulation indicating that Service Merchandise Company (Service Merchandise) could file a brief as amicus curiae in support of appellant Sharper Image, and this court has approved that stipulation.
[2] Section 212.06(1)(a), Florida Statutes (1987), is quoted infra.
[3] Section 212.06(6), Florida Statutes (1987), provides:

It is however, the intention of this chapter to levy a tax on the sale at retail, the use, the consumption, the distribution, and the storage to be used or consumed in this state of tangible personal property after it has come to rest in this state and has become a part of the mass property of this state.
[4] The tax rate in section 212.05(1)(b) was increased to 6 percent effective February 1, 1988. Ch. 87-548, § 8, at 39-40, Laws of Fla.
[5] The tax rate in section 212.06(1)(a) was increased to 6 percent effective February 1, 1988. Ch. 87-548, § 21, at 58-59, Laws of Fla.
[6] Section 212.08(7)(w), Florida Statutes (Supp. 1988), provides:

(7) MISCELLANEOUS EXEMPTIONS.
* * * * * *
(w) Newspapers.Likewise exempt are newspapers.
[7] Section 212.06(9), Florida Statutes (1987), provides:

The taxes imposed by this chapter do not apply to the use, sale, or distribution of religious publications, bibles, hymn books, prayer books, vestments, altar paraphernalia, sacramental chalices, and like church service and ceremonial raiments and equipment.
[8] It cannot be said that Sharper Image has no real remedy despite its standing to challenge the "taxing scheme." The available remedy, striking the illegal exemption, should lead to a broader tax base and presumably more equitable rates. As this opinion notes above, the United States Supreme Court in Texas Monthly contemplated elimination of an exemption in response to a finding that such exemption is unconstitutional. 489 U.S. at 8, 109 S.Ct. at 896.